IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:10cv195

| | |
|---|---|
| IN RE:<br>GEORGE BASHOR and TINA BASHOR,<br><br>    Debtors.<br>    Chapter 7 Case No.: 09-11343 | )<br>)<br>)<br>)<br>)<br>) |
| KATRINA GREEN,<br><br>    Plaintiff/Appellee,<br><br>        vs.<br><br>GEORGE BASHOR, d/b/a,<br>GEORGE BASHOR CONSTRUCTION, INC.,<br><br>    Defendant/Appellant.<br><br>    Adversary Proceeding No. 10-01009 | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM OF DECISION AND ORDER**

**THIS MATTER** is before the Court on the Notice of Appeal of the Debtor and Adversary Proceeding Defendant George Bashor [Doc. 1]. He appeals from an Order of the Bankruptcy Court holding that his debt to the Plaintiff-Appellee is non-dischargeable. For the reasons set forth below the Order of the Bankruptcy Court is reversed and this matter is remanded for further

proceedings.

## PROCEDURAL HISTORY

On December 9, 2009, George and Tina Bashor filed a Voluntary Petition pursuant to Chapter 7 of the Bankruptcy Code. [Bky. 09-11343,[1] Doc. 1]. In the Petition, it was disclosed that George Bashor (Bashor) had formerly done business as George Bashor Construction, Inc. [Id.]. On March 15, 2010, Katrina Green (Green) filed an Adversary Proceeding to determine the dischargeability of a debt owed to her by Bashor in connection with an agreement for the construction of two homes by George Bashor Construction, Inc. [A.P. 10-01009, Doc. 1]. After Defendant Bashor filed Answer in the Adversary Proceeding, Green moved for judgment on the pleadings. [Id., Doc. 8]. The Bankruptcy Court, Hon. George R. Hodges, conducted a hearing on August 18, 2010 and thereafter granted Green's Motion. [Id., Doc. 18; Doc. 15]. The Court concluded that the debt which Bashor owed Green based on a Judgment entered in state court on March 18, 2008 in the amount of $1,108,177.15 was non-dischargeable pursuant to 11 U.S.C. §523(a)(2)(B). [Id., Doc. 15]. From that ruling, Bashor appealed to this Court.

---

[1] Citations to the record of the underlying bankruptcy proceeding are noted by Bky 09-11343. Citations to the record on the adversary proceeding are noted by A.P. 10-01009.

**STANDARD OF REVIEW**

The decision of the Bankruptcy Court is reviewed by a two-step process. Reversal of the findings of fact of the Bankruptcy Court may occur only where the findings are clearly erroneous. Educational Credit Management Corp. v. Frushour (In re Frushour), 433 F.3d 393, 398 (4th Cir. 2005). The conclusions of law of the Bankruptcy Court are reviewed de novo. Id.; Scholossberg v. Barney, 380 F.3d 174, 178 (4th Cir. 2004).

The Bankruptcy Court granted judgment on the pleadings. This is a determination as a matter of law that the facts admitted in the pleadings entitle the movant to judgment. Fed. R. Bky. Pro. 7012(b); Fed R. Civ. Pro. 12(c); Maryland v. Ciotti (In re Ciotti), 638 F.3d 276, 278 (4th Cir. 2011). Since this is a legal conclusion it is reviewed *de novo*.

**FACTUAL BACKGROUND**

The parties agree with the following statement of facts:[2]

> On or about August 2003, [Green] and ... Bashor entered into a verbal agreement for Bashor Construction to complete the construction of a custom home in Macon County, Highlands, North Carolina. The home had already been framed and all rough-ins were complete [sic] at that time by another Contractor. On or about November 11, 2004, the Plaintiff and ... Bashor entered into a written fixed-price contract for the construction of

---

[2]In Bashor's Answer to the Adversary Proceeding Complaint, he either admitted or did not deny the allegations set forth in that Complaint. [A.P. 10-01009, Doc. 8, at 1-2]. In Bashor's Brief on Appeal, he has reiterated the facts set forth in the Adversary Proceeding Complaint. [Doc. 4, at 7-8].

a second custom home in Jackson County, Highlands [sic], North Carolina.

...

[Green] terminated her contract with Bashor Construction for cause.

Bashor Construction filed suit against Green ... in Macon County Superior Court. [Green] filed ... a Motion to stay the litigation pending arbitration, ... [and asserted] counterclaims against both George Bashor Construction, Inc. and George T. Bashor individually. [I]n conformity with the provisions of the contract between the parties, the case was sent to arbitration in accordance with the Construction Industry Rules of the American Arbitration Association, [AAA].

After a four day evidentiary hearing, the AAA arbitrator, Dennis James Hall issued a written award, on or about September 10, 2007[.] The Arbitrator found that the construction by Bashor Construction failed to conform to the normal standards of care of a general contractor providing construction services for a custom home and in accordance with the contract documents, as well as with County and State Construction Codes.

The Arbitrator awarded damages to [Green] in the amount of ... $395,210.10[.] The award was granted against both Bashor Construction and George Bashor, personally.

The Arbitrator further found that Bashor intentionally engaged in fraud and deceptive practices. The Arbitrator granted [Green's] unfair and deceptive practices claim, trebling the damages granted to [Green], awarding a total [of] ... $1,185.630.30. After offsetting damages awarded to Bashor Construction, the total award was ... $1,108.177.15[.]

On or about March 18, 2008, the award of the arbitrator was confirmed after hearing by Judge Mark E. Powell and made a judgment of the courts of North Carolina.

[AP. 10-01009, Doc. 1, at 2-3; Doc. 8, at 1-2].

4

Attached to the Adversary Proceeding Complaint is a copy of the Arbitrator's award. [A.P. 10-01009, Doc. 1-1]. The Arbitrator found that when Bashor failed to construct the work in accordance with project and contractual requirements, Green did not withhold payment but instead paid Bashor's subcontractors directly and hired her own contractors to complete the work. [Id., at 3]. Bashor, on the other hand, failed to provide supervision, delayed completion, and caused structural and other defects which required correction. [Id., at 4]. He failed to "comply with even the basic standards of care in the construction of these homes." [Id.]. The Arbitrator made the following findings concerning fraud and unfair and deceptive trade practices:

> [Bashor Construction] intentionally engaged in fraud and deceptive trade practices by invoicing and collecting funds from [Green], knowing the funds invoiced by [Bashor Construction] and the monies paid by [Green] directly to [Bashor Construction's] subcontractors and material suppliers, exceeded the contract sum. [Bashor Construction] failed to invoice in accordance with the schedule in the Contract and [failed to] provide detailed written invoices. [Bashor Construction] knew or should have known that the work failed to conform to the Contract Documents when he invoiced for construction services. And [Bashor Construction] failed to make payments to subcontractors and material suppliers due money for which [Bashor Construction] was paid. Further, [Bashor Construction] has sought monies in excess of the balance of the contract sum with no proof of such monies being owed by [Green].

[Id., at 5]. The Arbitrator also found that Bashor Construction was the alter ego of Bashor and thus, granted the award against Bashor personally. [Id.].

5

After the arbitration, Bashor returned to state court where he sought to vacate the arbitration award and Green, in return, sought to confirm it. [Id., Doc. 1-2]. The state court judge found the arbitrator's decision was a "reasoned award" and confirmed it. [Id.]. He also denied Bashor's motion to vacate the arbitration award. [Id.]. The Court specifically noted that the award was against Bashor individually. [Id.]. The Court also confirmed the trebling of damages for unfair and deceptive trade practices as part of the award. [Id.].

In the Adversary Proceeding, the Bankruptcy Court conducted a hearing on the issue of whether Bashor's debt should be discharged. [A.P. 10-01009, Doc. 18]. Judge Hodges ruled at that hearing that "[t]he arbitrator wrote a written decision finding that [Bashor's conduct] was fraudulent, and I forget exactly the words that he used but I think he used the magic words necessary and the state court has approved that, and I think that resolves the issue for us." [Id., at 12]. As a result, the Court granted the motion for judgment as a matter of law. [Id.]. On August 25, 2010, he entered an Order holding Green's claim to be non-dischargeable pursuant to 11 U.S.C. §523(a)(2)(B). [Doc. 1-1].

## DISCUSSION

**Appellant's claim that 11 U.S.C. §523(a)(2)(B) does not apply.**

Bashor argues that the issues decided in the arbitration proceeding do not satisfy the criteria which must be met in order to deny a debtor the discharge of a debt pursuant to 11 U.S.C. §523(a)(2)(B). That statute provides that a debt is not dischargeable in a Chapter 7 bankruptcy to the extent that the debt was incurred by the use of a *statement in writing* which was (1) materially false; (2) *concerning the debtor's financial condition*; (3) on which the creditor reasonably relied; and (4) which the debtor caused to made or published with intent to deceive. 11 U.S.C. §523(a)(2)(B). As noted above, the Arbitrator made findings of fact that Bashor issued invoices to Green and collected funds from her which exceeded the sums specified in the contract. He also issued invoices for sums which Green had already paid to subcontractors and materials suppliers directly, as though such payments had not been made. On other occasions, he invoiced Green who paid him but he then failed to pay the subcontractors and materials suppliers. In addition, Bashor issued invoices to Green in excess of the balance actually owed on the contract with no proof that such sums were owed.

Bashor argues on appeal that none of these actions involved providing Green with a *written statement concerning his financial condition*, as

7

contemplated by the statute.³ [Doc. 4, at 11]. Green responds that a broad reading of the statute is warranted and, under a broad reading, Bashor obtained additional funds from Green by submitting to her invoices which falsely represented the financial condition of the company. [Doc. 5, at 11].

"Section 523(a)(2)(B) does not cover every material statement of fact made in writing to the creditor to induce the credit. It is confined in its application to statements about the financial condition of the debtor[.]" 4 Collier on Bankruptcy §523.08[2][c] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.). The phrase "financial condition," however, is not defined by the statute and "[c]ourts are sharply divided on the proper scope of the term." Id. Some courts have held that the phrase refers only to the debtor's overall financial condition, such as net worth, while others have found that because the statute refers to financial condition rather than to a financial statement, a broader scope is invoked. Id. The Fourth Circuit held that in §523(a)(2)(B),

> Congress did not speak in terms of financial statements. Instead it referred to a much broader class of statements – those "respecting the debtor's ... financial condition." A debtor's assertion that he owns certain property free and clear of other liens is a statement respecting his financial condition. Indeed, whether his assets are encumbered may be the most significant information about his financial condition. Consequently, the statement must be in writing to bar the debtor's discharge.

---

³Bashor has not argued that the other elements of the statute were not shown.

8

Engler v. Van Steinburg (In re Steinburg), 744 F.2d 1060, 1061 (4th Cir. 1984).

Bankruptcy Courts in the Fourth Circuit have continued to apply the more expansive reading of the statute.

> It is well established that §523(a)(2)(A) and §523(a)(2)(B) are mutually exclusive. The former "applies expressly when the debt follows a transfer of value or extension of credit induced by falsity or fraud (not going to financial condition), the other when the debt follows a transfer or extension induced by a materially false and intentionally deceptive written statement of financial condition upon which the creditor reasonably relied." This dichotomy creates a curious anomaly: if stated orally, a false statement respecting the debtor's financial condition, no matter how egregious, will not render the debt nondischargeable.

Tompkins v. Whitenack (In re Whitenack), 235 B.R. 819, 823-24 (D.S.C. 1998).

Examples of statements of financial condition include a written funding application in which the debtor disclosed the approximate amount of income earned each month from credit card receipts, Ocean Equity Group, Inc. v. Wooten (In re Wooten), 423 B.R. 108, 124 (E.D.Va. 2010), and an equipment list submitted in seeking a loan. United Virginia Bank v. Cook (In re Cook), 46 B.R. 545, 549-50 (Va. 1985). See also, Colombo Bank v. Sharp (In re Sharp), 340 F. App'x 899 (4th Cir. 2009) (financial disclosure statement submitted to bank for mortgage is written statement of financial condition); Fischer Investment Capital, Inc. v. Cohen (In re Cohen), 507 F.3d 610 (7th Cir. 2007) (handwritten document showing accounts receivable is written statement of

9

financial condition); Friendly Finance Service v. Dorsey (In re Dorsey), 505 F.3d 395 (5th Cir. 2007) (statement in security agreement that debtor posted gun as collateral, without admitting ownership of gun, not a written statement of financial condition); Cadwell v. Joelson (In re Joelson), 427 F.3d 700, 712 (10th Cir. 2005), cert. denied 547 U.S. 1163, 126 S.Ct. 2321, 164 L.Ed.2d 840 (2006) (section requires a false written statement describing debtor's net worth, overall financial health or ability to generate income); Swift Financial Corporation v. Matera (In re Matera), 2010 WL 5093637 (E.D.Va. 2010) (oral communication via telephone of financial condition for credit application reduced to writing by computer not written statement of financial condition); Morris v. Marrin (In re Marrin), 2009 WL 3754546 (E.D.Va. 2009) (statement of income in rental application qualifies).

On the particular issue of whether false invoices constitute statements of financial condition, the courts are divided. In CM Partnership v. Groover (In re Groover), 2004 WL 212948 **6 (M.D.N.C. 2004), the Bankruptcy Court found that false invoices were not written statements of the debtor's financial condition. In that case, the debtor entered into a factoring agreement with the adversary proceeding plaintiff pursuant to which the plaintiff purchased the accounts receivable of the debtor's business at a discount. The debtor caused his business to create false invoices referencing work which had not

10

been performed. The invoices were submitted to the factor for purchase. The Bankruptcy Court found that "these phony invoices constitute misrepresentations regarding accounts receivable that did not exist" and thus, stated a claim for non-dischargeability under §523(a)(2)(*A*). The Court specifically found, however, that the "false invoices which were submitted ... were not statements regarding the [debtor's] financial condition." Id., at **6. The Court dismissed the claim for relief pursuant to §523(a)(2)(B). Id.

A Bankruptcy Court in New York reached the opposite conclusion on almost identical facts. In In re Salzman, 61 B.R. 878 (S.D.N.Y. 1986), the adversary proceeding plaintiff advanced money to the debtor in return for a security interest in the debtor's accounts receivable. The debtor submitted false invoices for work which had not been performed to the plaintiff which caused the plaintiff to extend credit. The Court there held:

> The [adversary proceeding] plaintiff has the burden under 11 U.S.C. §523(a)(2)(B) of establishing by clear and convincing evidence that it advanced money and extended credit ... by use of a materially false statement in writing respecting [the debtor's] financial condition on which the plaintiff reasonably relied and that the debtor[ ] caused such statement to be made with intent to deceive. ... It is ... well-established that a bankruptcy court must recognize that the relief afforded in bankruptcy cases was intended to permit an honest debtor to obtain a fresh start, so that objections to a discharge must be construed strictly against the objectant and liberally in favor of the debtors. However, this general principle applies to protect debtors only in those cases where there is no intent to violate the bankruptcy laws and the debtors acted honestly. There is no question that an assigned

11

> fraudulent invoice is a materially false statement in writing respecting the financial condition of the assignor.

Id., at 887.

None of these cases, however, support a definition of "statement of financial condition" broad enough to sustain Green's argument. A representation of financial condition must be a statement of the viability of the enterprise, its ability to generate income, or the extent of its assets, liabilities or net worth. Joelson, 427 F.3d at 712. In this case Bashor issued fraudulent invoices, but not for the purpose of stating that such invoices represented assets (receivables) of his business, as did the debtors in Salzman and Groover. He did so seeking to *induce payment* of the invoices. This distinction is crucial. A misrepresentation is actionable in fraud only if it is material and reasonably relied upon. Ace, Inc. v. Maynard, 108 N.C.App. 241, 249, 423 S.E.2d 504, 509 (1992), review denied 333 N.C. 574, 429 S.E.2d 567 (1993). To the extent Bashor represented anything about his financial condition by issuing these invoices, Green did not rely on that information. She only relied on the representation that the work had been done and the materials purchased - regardless of whether Bashor was flush or broke at the time. If the means by which a party seeks to perpetrate a fraud constitutes a "statement of financial condition," then this element is present in *all* frauds. Such an interpretation would, therefore, write the "statement of financial

12

condition" element out of §523(a)(2)(B).

The Bankruptcy Court ruled that the debt was non-dischargeable pursuant to §523(a)(2)(B) but made no specific finding that these invoices constituted written statements of financial condition. Having reviewed the Bankruptcy Court's decision <u>de novo</u>, this Court is constrained to conclude that the submission of false invoices to Green *for payment* does not constitute a written statement of the financial condition of the debtor and/or his business. <u>Boyajian v. New Falls Corporation (In re Boyajian)</u>, 564 F.3d 1088 (9th Cir.2009) (appellate court reviews <u>de novo</u> bankruptcy court's interpretations of the bankruptcy statutes).

**The application of collateral estoppel.**

The thrust of the Bankruptcy Court's ruling is that it found itself to be collaterally estopped from considering the issue of dischargeability because it is based on the Debtor's fraud, holding "The arbitrator wrote a written decision finding that it was fraudulent ... and I think that resolves the issue for us." [A.P. 10-01009, Doc. 18 at 12]. Bashor argues that this was error.

Collateral estoppel principles apply in bankruptcy cases and can be used in non-dischargeability actions to prevent the re-litigation of issues decided in state court matters. <u>Grogan v. Garner</u>, 498 U.S. 279, 111 S.Ct.

13

654, 112 L.Ed. 2d 755 (1991). "Where the issue previously litigated was litigated under state law, a bankruptcy court will apply the law of collateral estoppel of the relevant state." 4 Collier on Bankruptcy §523.06 (citations omitted); Hagan v. McNallen (In re McNallan), 62 F.3d 619, 624 (4th Cir. 1995). "Federal courts must give the same preclusive effect to a state court judgment as the forum that rendered the judgment would have given it." Sartin v. Macik, 535 F.3d 284, 287 (4th Cir. 2008). Nonetheless, the ultimate determination of dischargeability is made pursuant to federal bankruptcy law. McNallan, at 624-25.

> In order to assert collateral estoppel under North Carolina law, a party must show that the issue in question was identical to an issue actually litigated and necessary to the judgment, that the prior action resulted in a final judgment on the merits, and the present parties are the same as, or in privity with, the parties to the earlier action.
> ...
> As to the first requirement – that the issue in question was identical to an issue actually litigated and necessary to the judgment – the Supreme Court of North Carolina has held that parties must satisfy four additional criteria:
>
>> (1) the issues must be the same as those involved in the prior action, (2) the issues must have been raised and *actually litigated* in the prior action, (3) the issues must have been material and relevant to the disposition of the prior action, and (4) the determination of the issues in the prior action must have been necessary and essential to the resulting judgment.

Sartin, 535 F.3d at 287-88 (emphasis in original; citations omitted).

14

The only factor in dispute here is the first: that the issue in question was identical to an issue actually litigated and necessary to the judgment. The arbitrator found that Bashor had engaged in unfair and deceptive trade practices and made findings of fact that:

> [Bashor Construction] intentionally engaged in fraud and deceptive trade practices by invoicing and collecting funds from [Green], knowing the funds invoiced by [Bashor Construction] and the monies paid by [Green] directly to [Bashor Construction's] subcontractors and material suppliers, exceeded the contract sum. [Bashor Construction] failed to invoice in accordance with the schedule in the Contract and [failed to] provide detailed written invoices. [Bashor Construction] knew or should have known that the work failed to conform to the Contract Documents when he invoiced for construction services. And [Bashor Construction] failed to make payments to subcontractors and material suppliers due money for which [Bashor Construction] was paid. Further, [Bashor Construction] has sought monies in excess of the balance of the contract sum with no proof of such monies being owed by [Green].

[A.P. 10-01009, Doc. 1-1, at 5]. Part and parcel of this finding is that the Debtor "intentionally engaged in fraud." [Id.].

Although proof of fraud necessarily constitutes an unfair and deceptive trade practice, the converse is not always the case. Wilson v. Wall-McMahel (In re Wall-McMahel), 2010 WL 2901694 **3 (E.D.N.C. 2011). "Substantial evidence of fraud consists of '(1) [f]alse representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured

15

party.'" Ace, 108 N.C.App. at 249, 423 S.E.2d at 509 (citations omitted)

In order to prove that Bashor's debt is non-dischargeable, however, Green was obligated in the bankruptcy proceeding to prove that the debt was obtained by the use of a statement in writing which was (1) materially false; (2) concerning the debtor's financial condition; (3) on which she, as the creditor, reasonably relied; and (4) which the debtor caused to be made or published with intent to deceive. 11 U.S.C. §523(a)(2)(B). The issues are not the same as those involved in the prior action. There was no finding by the arbitrator that Bashor committed fraud by way of a written statement. Blackwell v. Dabney (In re Blackwell), 702 F.2d 490, 492 (4th Cir. 1983) (statement of financial condition must be written in order to qualify for nondischargeability under §523(a)(2)(B)). As addressed in Part 1, supra, there is no finding by the arbitrator that any misrepresentation by the Debtor concerned his financial condition. Sartin, 535 F.3d at 287-88. Since these issues were not actually litigated in the state court proceeding, collateral estoppel does not apply. Capital Hauling, Inc. v. Forbes, 75 F. App'x 170 (4th Cir. 2003); Donham v. Walters (In re Walters), 2011 WL 2224616 **5 (N.D.W.Va. 2011). "[T]he determinative findings articulated in the previous state court judgment which held the defendant liable for committing an unfair and deceptive trade practice do not perfectly align with the issue of

16

dischargeability." In re Wall-McMahel, 2010 WL 2901694 at **3.

It is noted, however, that the two elements missing from the arbitrator's findings (written misrepresentation and statement regarding financial condition) are not elements for non-dischargeability under §523(a)(2)(*A*).[4] On remand the Bankruptcy Court may need to determine whether any claim for non-dischargeability under (a)(2)(A) has been waived or abandoned, and whether that section may be applied in this action. Since that is not among the issues in this appeal, the Court will not address it here.

Although this Court has accepted the findings of fact of the arbitrator, as well as the determination by the state court regarding the fraud committed by the Debtor, as matter of bankruptcy law the facts recited by the arbitrator do not establish the elements of §523(a)(2)(B). For this reason, the order of the Bankruptcy Court holding the debt to Green to be non-dischargeable must be reversed and this matter must be remanded for further proceedings.

## ORDER

**IT IS, THEREFORE, ORDERED** that the Order of the Hon. George R. Hodges entered August 25, 2010 in the underlying adversary proceeding, A.P. 10-01009, is hereby **REVERSED** and this matter is hereby **REMANDED** for

---

[4] It appears from the transcript of the hearing that the Bankruptcy Judge may well have been applying §523(a)(2)(A) rather than (a)(2)(B), even though he mentioned neither.

further proceedings consistent with this decision.

Signed: September 29, 2011

Martin Reidinger
United States District Judge